UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JASON C.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C18-5833 BAT

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING WITH PREJUDICE**

Plaintiff appeals the denial of his application for Supplemental Security Income. He contends the ALJ erred by (**1**) failing at step three of the sequential analysis to determine that he met or equaled the listing for a depressive disorder (Listing 12.04) and a disorder of the spine (Listing 1.04)[1]; (**2**) giving too little weight to the examining opinion of psychologist Katrina L. Higgins, Psy. D.; and (**3**) assessing an incomplete RFC, which rendered the vocational expert's testimony inadequate and left the decision unsupported by substantial evidence. Dkt. 12, at 5–10. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

---

[1] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION
AND DISMISSING WITH PREJUDICE - 1

## BACKGROUND

Plaintiff is currently 38 years old, graduated high school, and attended some classes at a technical college. In 2014, he applied for SSI benefits, alleging disability as of January 1, 2014 After his application was denied initially and on reconsideration, the ALJ conducted a hearing in July 2017, at which a medical expert testified. Tr. 34–78. In a September 2017 decision, the ALJ determined at **step one** of the five-step evaluation process that plaintiff had not engaged in substantial gainful activity since SSI application date, at **step two** that plaintiff had the severe impairments of **obesity and right shoulder abnormality**, and at **step three** that those impairments did not meet or equal the requirements of a listed impairment. Tr. 17–23. The ALJ determined that plaintiff has a **residual functional capacity ("RFC") to perform medium work that does not require right dominant overhead reaching and that does not require more than frequent right reaching in other directions**. Tr. 23–25. The ALJ determined at **step four** that plaintiff had no past, relevant work and at **step five** that jobs exist in significant numbers in the national economy that plaintiff can perform. Tr. 25–27. The ALJ therefore found that plaintiff is not disabled. Tr. 27. Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff has submitted a poorly supported brief that fails to demonstrate that the ALJ erred in any meaningful way.

**1. Step Three Analysis**

Plaintiff argues that he meets Listing 12.04 for a depressive disorder and Listing 1.04 for a disorder of the spine but specifies neither the criteria nor how any subsection might qualify him to be deemed presumptively disabled. *See* Dkt. 12, at 5–6. The Court rejects counsel's conclusory argumentation.

The Commissioner "explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Thus, for a claimant to show that an impairment satisfies a listing, he "must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530. "An impairment that manifests only some of the criteria, no matter how severely, does not qualify." *Id.*

Plaintiff does not even attempt to satisfy the criteria of Listing 12.04. Instead counsel cites Dr. Higgins for the broad proposition that a depressive disorder can generally result in adverse, mental symptoms. Dkt. 12, at 5. The cited portions of Dr. Higgins's opinion, however, undermine the proposition that plaintiff meets a listing. Dkt. 12, at 5 (citing Tr. 392, 398). Dr. Higgins noted her concern that plaintiff was feigning his memory problems and learning disabilities because there was no reasonable explanation for the discrepancies from the 2014 test she administered and a contrasting 2010 test. Tr. 392, 398. It is careless for counsel to support meeting Listing 12.04 by citing the conclusion of examining psychologist Stephanie Hanson,

Ph.D., that plaintiff is unable to work. Dkt. 12, at 5 (citing Tr. 425). First, the ultimate determination of disability is a question reserved for the Commissioner. Second, citing Dr. Hanson's conclusion does not address the specific criteria of Listing 12.04. Third, at the hearing the medical expert explained, and plaintiff does not contest, why plaintiff did not meet Criteria B of a listing: 2010 testing showed he had no limitations such that the 2014 test showing low IQ and poor concentration could not be explained absent head trauma or significant substance abuse; plaintiff's mental statuses were fairly normal throughout the record; his activities of daily living were fairly normal; there was no indication that he had difficulty interacting with others; there was no indication of problems with concentration, persistence, or maintaining pace; there was no indication of inability to pay attention or of being distracted; and there was no indication of an inability to adapt or to manage himself. Dkt. 42–43. Moreover, the medical expert and the ALJ rejected Dr. Hanson's conclusions as inconsistent with Dr. Hanson's concurrently administered mental status exam. Tr. 21, 44; *compare* Tr. 422–25 *with* Tr. 428–30.

Plaintiff cites no record evidence for the proposition that he meets Listing 1.04 for a disorder of the spine. The Court will not scour the record to look for evidence of plaintiff's ability to meet Listing 1.04 when plaintiff's counsel has failed to cite the record even in a cursory manner.

The Court finds the ALJ's step three determination that plaintiff did not meet or equal Listing 12.04 and Listing 1.04 was supported by substantial evidence and was not the result of harmful legal error.

**2. Evaluation of Dr. Higgins's Opinion and the Medical Evidence**

Plaintiff argues the ALJ misevaluated the medical evidence but contends only that the 2014 examining opinion of Dr. Higgins should have been given greater weight. Dkt. 12, at 7. The Court rejects this argument.

Dr. Higgins opined:

> Based on today's evaluation, he appears to have some serious intellectual and cognitive deficits. . . . however, his records include a report from an evaluation completed 4 years ago, during which the WAIS-IV was administered. . . . This comparison reveals a 28 point difference between his IQ scores as it was measured then and as it was measured today. There is nothing in his history (i.e. severe brain trauma) that would explain such a difference. . . . Based solely on his scores today I would say he qualifies for at least a diagnosis of Borderline Intellectual Functioning, if not Mild Intellectual Disability. However, the discrepancy in his performance over time raises questions as to the accuracy of this diagnosis.

Tr. 39. Dr. Higgins concluded: "Because there are so many unknown factors in [plaintiff's] presentation, I do not feel able to comment on his prognosis for improvement." *Id.* Due to the discrepancies noted in Dr. Higgins's report, the Cooperative Disability Investigations Unit ("CDIU") investigated plaintiff. Tr. 403–12. The investigator interviewed plaintiff and found that he had been caring for his father for six months while performing all the cooking, cleaning, laundry, and assisting with his father's personal hygiene; plaintiff took care of all of his father's finances; plaintiff reported using the bus, shopping, playing basketball, and shooting pool; plaintiff recently applied for a job at a fast-food restaurant; plaintiff was trying to officially become his father's caregiver so he would be paid for caretaking; and the investigator witnessed plaintiff carrying a small bag and a jug of milk in his right hand and arm. Tr. 403. The ALJ gave little weight to Dr. Higgins's opinion because Dr. Higgins herself noted that it was unclear whether plaintiff's behavior was due to poor effort or difficulties with attention. Tr. 20. The ALJ

gave more weight to the testifying medical expert, who was able to review the CDIU report and the treatment record that post-dated Dr. Higgins's report. Tr. 21.

Plaintiff has failed to show how it was improper for the ALJ to give little weight to Dr. Higgins's opinion, particularly because Dr. Higgins herself voiced reservations about the validity her diagnosis and of the testing she administered in 2014. The Court finds that the ALJ's evaluation of the medical evidence, including the decision to discount Dr. Higgins's examining opinion, was supported by substantial evidence and was not the result of harmful legal error.

### 3. RFC and Other Issues

Plaintiff argues that the ALJ erred in assessing RFC, thereby undermining the vocational testimony and step five findings. The Court rejects this argument.

Plaintiff cannot establish error in the RFC assessment or in the step five findings merely be restating his earlier, unsupported arguments that the medical evidence was misevaluated. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008). Plaintiff's argument fails because he cannot demonstrate that the ALJ misevaluated the medical record.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 10th day of June, 2019.

　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　BRIAN A. TSUCHIDA
　　　　　　　　　　　　　　　　　　Chief United States Magistrate Judge